# In the United States Court of Federal Claims

No. 24-2010
Filed: September 15, 2026

| | |
|---|---|
| SAMANTHA SHERMAN, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

*Steven M. Wald*, Stewart, Wald & Smith, LLC, St. Louis, Missouri, for plaintiffs.

*Alexis E. Smith*, United States Department of Justice, Environmental and Natural Resources Division, Washington, D.C., for defendant.

**OPINION AND ORDER**

***SMITH*, Senior Judge**

The fourteen plaintiffs in this case seek compensation for the United States' uncompensated taking of their New York properties. They now move for partial summary judgment on liability, asking the Court to find that (1) all source conveyances granted easements to the original acquiring railroad; (2) recreational trail use exceeds the scope of those easements; (3) plaintiffs regained fee simple ownership of the land underlying the railroad corridor based on their adjacency to the rail line; and (4) the issuance of a Notice of Interim Trail Use ("NITU") constituted a taking. *See* Pls.' Mot. for Summ. J., ECF No. 40 (hereinafter "Pls.' Mot."). The Government has cross-moved for partial summary judgment on liability, arguing that plaintiffs cannot establish (1) that they have an ownership interest in the rail corridor; (2) causation or a right to just compensation due to the existence of an existing recreational trail that predated the NITU; and (3) that the railroad would have abandoned the rail line absent the NITU. *See* United States' Cross-Mot., ECF No. 41 (hereinafter "United States' Cross-Mot.").

For the reasons explained below, the Court finds that plaintiffs' deeds conveyed a combination of both easements and fee simple. The Government has taken a portion of plaintiffs' property for public use, but liability remains unresolved for several claims. The Court also finds that while the pre-existing recreational trail does not affect causation, it may nevertheless impact just compensation. Therefore, plaintiffs' motion for partial summary judgment, ECF No. 40, is **GRANTED-IN-PART** and **DENIED-IN-PART** and the Government's cross-motion for partial

summary judgment, ECF No. 41, is **GRANTED-IN-PART** and **DENIED-IN-PART** under Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC").

## I. Background

### A. The Railroad Right-of-Way and the Maybrook Trail

This rails-to-trails case concerns a 41.1-mile section of rail line running from the state line separating Connecticut and New York at Milepost 71.2 to Beacon, New York at Milepost 0 in the Hudson Valley region. *See* Sec. Am. Compl., ¶ 3, ECF No. 13. The segment of the rail line at issue is known as the "Beacon Line." In 1992, the Maybrook Railroad Company ("MRC") acquired 157 miles of railroad that included the Beacon Line. *See* Pls.' Mot. at 19–20. After a series of railroad mergers and land purchases, the Metro-North Commuter Railroad Company ("MNR") acquired the Beacon Line from MRC in 1995. *Id*. at 20.

In 2020, MNR built a 23-mile paved multi-use recreational trail known as the Maybrook Trail. *See* United States' Cross-Mot. at 13. The Maybrook Trail runs parallel to the portion of the corridor in which a second track once ran before MNR purchased the line. *Id*. The trail has been open to the public for use as a pedestrian and bicycle trail since 2020. *Id*.

### B. STB Proceedings

Under the National Trails System Act ("Trails Act"), a railroad may initiate abandonment proceedings of a rail line before the federal Surface Transportation Board ("STB"). 49 U.S.C. § 10903; *see* 16 U.S.C. § 10502. When the railroad notifies the STB of its intent to abandon, a qualified "trail sponsor"—usually a county, city, or qualifying non-profit—may notify the STB of its interest in managing the railroad right-of-way for public recreational purposes. 16 U.S.C. § 1247(d); 49 C.F.R. § 1152.29(a). The Trails Act establishes a process—known as "railbanking"—under which the railroad can negotiate with the intervening party to assume financial and operational responsibility of the right-of-way. 49 C.F.R. § 1152.29(a).

During this process, the STB may issue a NITU. 49 C.F.R. § 1152.29. The NITU is the governmental action that stays railroad abandonment during the pendency of the trail use and blocks the vesting of state reversionary interests in the right-of-way. *Barclay v. United States*, 443 F.3d 1368, 1371 (Fed. Cir. 2006), *holding modified by Hardy v. United States*, 965 F.3d 1338 (Fed. Cir. 2020) (quoting *Caldwell v. United States*, 391 F.3d 1226, 1234 (Fed. Cir. 2004)). If the railroad and trail sponsor agree, then the parties notify the STB, the corridor is railbanked, the STB retains jurisdiction, and "interim trail use is thereby authorized." *Preseault v. ICC*, 494 U.S. 1, 7 n.5 (1990) (*Preseault I*); *see also* 16 U.S.C. § 1247(d); 49 C.F.R. § 1152.29(h). On the other hand, the railroad may exercise its STB-granted authority to abandon the line if an agreement is not reached. 49 C.F.R. § 1152.29(d)(1), (e)(2); *see Citizens Against Rails-to-Trails v. STB*, 267 F.3d 1144, 1150–53 (D.C. Cir. 2001).

In December 2023, MNR filed a Verified Notice of Exemption of Abandonment with the STB. *See* Metro-North Commuter Railroad Company – Abandonment Exemption – In Dutchess and Putnam Counties, New York, STB Docket No. AB 1311 (Sub-No. 1X) (the "Abandonment Docket") (Doc. No. 307697, filed Dec. 21, 2023, supplemented Jan. 3, 2024), attached as Plaintiffs'

Ex. 25. MNR also requested a NITU with MNR serving as the trail sponsor, which the STB issued on February 8, 2024. *See* Pls.' Mot. at 22–23. To date, MNR has received two extensions of the standard one-year period to negotiate an interim trail use agreement with a qualified trail sponsor. *Id*. (citing Exs. 28–29). The NITU remains in effect and has not lapsed.

## II. Procedural History

On June 20, 2025, plaintiffs filed their operative complaint, asserting a claim under the Takings Clause of the Fifth Amendment. *See* Sec. Am. Compl. ¶¶ 3–25. On July 7, 2025, the Government filed an answer denying the material allegations in the complaint. *See* Ans., ECF No. 16. After consulting with the parties, the Court set a schedule in March 2026 for summary judgment briefing on whether the Government was liable for the taking of plaintiffs' property burdened by the trail-use easement. *See* Mar. 2, 2026 Order. The parties have fully briefed their competing motions for partial summary judgment. *See* Pls.' Mot; United States' Cross-Mot.; Pls.' Resp. and Reply in Support of Mot. for Partial Summ. J., ECF No. 42; United States' Reply Br., ECF No. 43.

## III. Standard of Review

The Court may "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A material fact is one "that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine factual dispute exists when the factfinder may reasonably resolve the dispute in favor of either party. *Id.* at 250. The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

At the summary judgment stage, any inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). However, summary judgment may still be granted when the party opposing the motion submits evidence that "is merely colorable . . . or is not significantly probative." *Anderson*, 477 U.S. at 249–50 (internal citations omitted). The moving party "need not produce evidence showing the absence of a genuine issue of material fact but rather may discharge its burden by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Dairyland Power Co-op. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994) (citing *Celotex Corp.*, 477 U.S. at 325). A court may only grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). However, the court retains discretion to deny even a well-supported motion for summary judgment if the case would benefit from a full hearing. *Lowery v. United States*, 167 Fed. Cl. 28, 37 (2023) (citation omitted).

The same standard applies when the parties have cross-moved for summary judgment. *See Marriott Int'l Resorts, L.P. v. United States*, 586 F.3d 962, 968–69 (Fed. Cir. 2009). "The fact that both parties have moved for summary judgment does not mean that the court must grant

judgment as a matter of law for one side or the other." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987). "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (citations omitted).

## IV. Discussion

The Government's liability for railbanking transfers under the Trails Act is well-settled. *See Caquelin v. United States*, 959 F.3d 1360, 1364 (Fed. Cir. 2020) (citing *Preseault I,* 494 U.S. at 11–17). If an adjacent landowner owns property underlying the right-of-way in fee simple, the Government is liable for a taking when "government action destroys state-defined property rights" either "by converting a railway easement to a recreational trail, if trail use is outside the scope of the original railway easement" or by compelling the continuation of a railroad-purposes easement to accommodate negotiations for a trail-use agreement, even if the negotiations are ultimately unsuccessful. *Ladd v. United States*, 630 F.3d 1015, 1019, 1020 (Fed. Cir. 2010) (explaining that the STB's "issuance of the NITU is the . . . government action in the rail-banking process that operates to . . . preclude the vesting of state law reversionary interests in the right-of-way," thus denying the landowners possession of their property unencumbered by the easement).

The determinative issues for liability in Trails Act cases are: (1) whether the railroad acquired fee simple ownership of the land or merely an easement; (2) if only an easement was acquired, whether the easement was limited to railroad use or was broad enough to encompass a public recreational trail; and (3) whether any such easement permitting recreational trail use expired before the alleged taking, leaving the landowners with full, unencumbered ownership at that time. *Galt Auto. Warehouse, Inc. v. United States*, 179 Fed. Cl. 138, 143–44 (2025) (citation omitted); *see also Ellamae Phillips Co. v. United States*, 564 F.3d 1367, 1373 (Fed. Cir. 2009). Property rights are defined by state law. *Castillo v. United States*, 952 F.3d 1311, 1319 (Fed. Cir. 2020).

This analysis becomes more complicated when a trail use agreement has not been reached. Under those circumstances, the United States Court of Appeals for the Federal Circuit has held that issuing a NITU may cause a temporary taking where no trail-use agreement has been reached but the NITU compels the railroad to delay its abandonment. *Ladd*, 630 F.3d at 1023–24. To establish causation when no trail use agreement exists, it must be clear that the railroad "had every intent to abandon the railroad lines during the period of time that the NITU was in effect and was prevented from doing so by the existence of the NITU." *Memmer v. United States*, 50 F.4th 136, 145 (Fed. Cir. 2022). To evaluate the railroad's intent, the Court may consider the railroad's initiation of abandonment proceedings, its refusal to extend the NITU, the timing of its abandonment relative to the NITU's expiration, the scope of authority granted under the NITU, and whether the railroad undertook physical acts consistent with abandonment, such as removing track infrastructure. *See Galt Auto. Warehouse, Inc.*, 179 Fed. Cl. at 144–45 (citing *Sauer West LLC v. United States*, 151 F.4th 1339, 1346 (Fed. Cir. 2025)). These factors are illustrative, not exhaustive. *See Sauer West*, 151 F.4th at 1346.

### A. Easements

Plaintiffs organize their claims into four distinct groups, each defined by the type of recording instrument used to convey the subject properties. *See* Pls.' Mot. at 23–24. The recording instruments fall within the following groups: (1) condemnations ("Group 1"); (2) deeds that reference railroad purposes in the granting clause ("Group 2"); (3) deeds that reference railroad purposes in the granting clause but also contain broader language regarding use of the easement ("Group 3"); and (4) deeds that reference railroad purposes outside of the granting clause ("Group 4"). *Id.* at 24. Plaintiffs move for summary judgment, requesting that the Court find that all applicable source conveyances conveyed easements under New York law and recreational trail use exceeded the scope of the easements. *Id.* at 25–44. Plaintiffs also assert that they are entitled to a summary judgment finding that the issuance of the NITU caused a taking. *Id.* at 40.

In its cross-motion, the Government uses a different scheme to categorize the plaintiffs and their corresponding claims. Specifically, the Government organizes the claims into the following four groups: (1) original source deeds conveyed a fee interest to the original railroad ("Group A"); (2) the original source deeds conveyed a broad easement that permits trail use ("Group B"); (3) the plaintiffs lack any ownership interest in the adjacent corridor ("Group C"); and (4) the centerline presumption does not apply ("Group D"). *See* United States' Cross-Mot. at 17–42. The Court addresses each group in turn, largely adopting plaintiffs' grouping scheme but noting any differences in the parties' grouping schemes.

#### 1. Group 1: Condemnations

Group 1 consists of 11 plaintiffs and 13 properties that were acquired by the original railroad through condemnation. *Id.* at 25 (citing Pls.' Ex. 1, ECF No. 40-1).[1] The Group 1 plaintiffs are listed below, along with references to the corresponding parcel numbers, conveyance documents, and citations to the summary judgment record:

| Claim No. | Plaintiff | Parcel No. | Applicable Conveyance | Record Source |
|---|---|---|---|---|
| 1a | Samantha Sherman | 134089-6855-04-833380-0000 | W. Baker 38/63 PLF000143-PLF000231 | Pls.' Ex. 45 |
| 1b | Samantha Sherman | 3.-1-42 | W. Baker 38/63 PLF000143-PLF000231 | Pls. Ex. 45 |
| 2 | 10 Boulevard LLC | 130200-6054-30-168772-0000 | Blossom 0-1/539 | Pls.' Ex. 47 |

[1] The Government categorizes nearly all Group 1 plaintiffs into the Government's Group C. *Compare* Pls.' Ex. 1, *with* United States' Cross-Mot., Ex. 1, ECF No. 41-1. The Government appears to suggest that at least one of the parcels owned by Beacon 248 Holdings, LLC—which plaintiffs associate with the Group 1 plaintiffs—falls into what the Government characterizes as the Group B plaintiffs. *See* United States' Cross-Mot., Ex. 1 at 3.

| | | | | |
|---|---|---|---|---|
| | | | Seamless Clothes Manuf. Co. 0-1/548 PLF000335-PLF000372 | Pls.' Ex. 54 |
| | | | State of New York 0-1/209 | |
| 3 | 23-28 Creek Drive LLC | 130200-6054-37-037625-0000 | Van Kluck 0-1/456 PLF000376-PLF000384 | Pls.' Ex. 55 |
| | | | Rothery 0-1/519 PLF000301-PLF000334 | Pls.' Ex. 59 |
| | | | State of New York 0-1/209 | |
| 4 | Beacon 248 Holdings, LLC | 130200-6054-45-012574-0000 | State of New York | |
| | | | New York Rubber 0-1/506 | Pls.' Ex. 58 |
| 5a | Hilltop Sport & Conservation, Inc. | 68.-2-40 | Haines V-2/48 PLF000293-PLF000296 | Pls.' Ex. 50 |
| | | | W P & M Fowler V2/51 PLF000284-PLF000288 | Pls.' Ex. 49 |
| 5b | Hilltop Sport & Conservation, Inc. | 69.-1-5 | Haines V-2/48 PLF000293-PLF000296 | Pls.' Ex. 50 |
| 7 | Weber Projects, III | 130200-6054-37-066670-0000 | Van Kluck 0-1/456 PLF000376-PLF000384 | Pls.' Ex. 55 |
| | | | Rothery 0-1/519 PLF000301-PLF000334 | Pls.' Ex. 59 |
| | | | State of New York 0-1/209 | |
| 8 | Clovebrook Farms LLC | 132200-6758-00-587077-0000 | Brill SC/113 PLF000289-PLF000292 | Pls.' Ex. 48 |
| 9 | John DeMarco | 134089-6855-02-787556-0000 | White SC/154 PLF000297-PLF000300 | Pls.' Ex. 56 |

| | | | | |
|---|---|---|---|---|
| 10 | Eleventh Jam Development LLC | 68.-2-18 | W P & M Fowler V2/51 PLF000284-PLF000288 | Pls.' Ex. 49 |
| 12 | Niche Modern, LLC | 130200-6054-22-246892-0000 | Blossom 0-1/539 PLF000232-PLF000278 | Pls.' Ex. 47 |
| 13 | Sahib Singh and Maninder Kaur | 132800-6557-03-283181-0000 | Baldwin SC/81 PLF000506-PLF000509 | Pls.' Ex. 46 |

The Group 1 plaintiffs argue that acquisition by condemnation in New York vests the railroad with an easement limited to railroad purposes. *See* Pls.' Mot. at 25–26 (collecting cases). The Court finds it necessary to offer a roadmap of the claims addressed in this section. For five of the Group 1 plaintiffs—Samantha Sherman, 10 Boulevard, LLC, 23-28 Creek Drive, LLC, John DeMarco, and Sahib Singh and Maninder Kaur (Claims 1–3, 9, and 13)—the Government did not dispute that ownership in the underlying land adjacent to the rail corridor had been established. *See* United States' Cross-Mot., Ex. 1, ECF No. 41-1. Rather, the Government focused on the extent of their property interests by arguing that the centerline presumption does not apply to their claims.[2] The Government only disputed ownership of three of the plaintiffs in Group 1 (Claims 5, 7, and 10). Finally, the claims of two of the Group 1 plaintiffs—Beacon 248 Holdings, LLC and Niche Modern, LLC—are addressed in the discussion of Groups 3 and 4, respectively.

**a. Samantha Sherman, 10 Boulevard, LLC, 23-28 Creek Drive, LLC, John DeMarco, Clovebrook Farms, LLC, and Sahib Singh and Maninder Kaur**

The Government has not raised any easement or ownership-related challenges against the parcels claimed by plaintiffs Samantha Sherman, 10 Boulevard, LLC, 23-28 Creek Drive, LLC, John DeMarco, and Sahib Singh and Maninder Kaur (Claims 1–3, 9, and 13). However, the Government does dispute the extent of these plaintiffs' ownership interests by raising various arguments seeking to rebut the applicability of the centerline presumption. *See* United States' Cross-Mot. at 34–43; United States' Reply Br. at 19–24. The Court thus finds that these five plaintiffs have established ownership of the subject parcel adjacent to the corridor. The Court considers the Government's arguments regarding the centerline presumption (*i.e.*, whether the ownership interest extends to the centerline of the rail corridor) as to the five plaintiffs later in this opinion.

Plaintiffs point out that the Government did not raise any easement, ownership-related, or scope challenges (including arguments concerning the applicability of the centerline presumption) against the parcel claimed by plaintiff Clovebrook Farms, LLC. *See* Pls.' Resp. at 7; United States' Cross-Mot., Ex. 1 at 5 (declining to categorize Clovebrook Farms, LLC into the Government's grouping scheme). The Court agrees and thus finds that Clovebrook Farms, LLC has established ownership of the subject parcel underlying the corridor.

---

[2] The Court ultimately resolves the Government's liability as to plaintiff 10 Boulevard, LLC in its discussion of the Group 2 plaintiffs. *See infra* pp. 10–11.

**b. Hilltop Sports & Conservation, Inc. and Eleventh Jam Development, LLC**

The Government argues that these two plaintiffs (Claims 5 and 10) do not own the three parcels underlying their takings claims because the deeds of their predecessors-in-title excluded the land underlying the corridor. *See* United States' Cross-Mot. at 33. Because the land was retained by the grantor in the two deeds from 1895 and 1945, the Government claims that plaintiffs' predecessors never owned land in the corridor and thus could not convey the land to the plaintiffs. *Id*. (citing United States' Exs. 19–20). For that reason, the Government argues that these two plaintiffs cannot establish their claims.

Plaintiffs disagree for two reasons. First, they argue that the Government relies on "isolated instruments untethered to a complete chain of title" and that these two "unauthenticated" deeds are insufficient to resolve title as a matter of law. *See* Pls.' Resp. at 27–28. Second, plaintiffs contend that a provision "excepting and reserving land that is already subject to an exclusive easement does not have a restrictive effect" and "merely notifies the grantee that the grant was subject to the easement already conveyed to the railroad." *Id*. at 28 (internal quotation marks omitted). Stated differently, the excepting language found in the two deeds does not reflect an intent to reserve the land in fee, but rather "serves as an acknowledgment" of the preexisting easement. *Id*. at 29–30.

The Court agrees with the Government that the language in the two deeds in plaintiffs' chain-of-title constitutes direct evidence that this land was excluded from the grant. *See* United States' Reply Br. at 18. At the same time, the arguments raised in plaintiffs' response (at 27–30) leave much to be desired. For instance, plaintiffs—the parties with the ultimate burden to establish ownership over the disputed property—have not presented any direct evidence demonstrating their ownership over the land. Nor have they identified any legal authority showing that New York courts interpret the excepting language found in the two deeds as merely acknowledging a preexisting easement. *See* Pls.' Resp. at 28 (interpreting Florida law on conveyances and asserting without authority that the law in "Florida is consistent with New York."). Rather, plaintiffs assert that title cannot be resolved on the current record because the Government has not established that the excepting language found in the two deeds from 1895 and 1945 "persisted and remained operative through later transactions and into Plaintiffs' ownership." *Id*.

Nevertheless, the Court is cognizant of its earlier order that amended the discovery schedule to allow for additional time to establish a full chain-of-title following summary judgment. *See* Feb. 19, 2026 Order, ECF No. 36. The Court recognizes that plaintiffs may not possess the full set of conveyance instruments for these three parcels at this time. Those records may establish plaintiffs' ownership of the subject parcels. The Court thus finds that a full hearing on these two claims is appropriate and therefore denies both parties' partial summary judgment motions as to whether plaintiffs Hilltop Sports & Conservation, Inc. and Eleventh Jam Development, LLC own the parcels underlying the corridor.

To be clear, for these two plaintiffs to establish liability at trial, they must demonstrate that the subsequent deeds in the chain-of-title conveyed the land in dispute. If plaintiffs cannot establish that, they must come forward with authority demonstrating that the "excepting and reserving" language does not withhold the land from the grant under New York law. The Court's

own review of New York law on this point suggests that this may be a tall order. *See Mentiply v. Foster*, 160 N.Y.S.3d 454, 459–60 (3d Dep't 2022) (collecting cases) ("[C]ourts will generally interpret" an "exception" or "exclusion" "to mean an interest or right in an estate that is not conveyed to the grantee").

**c. The Weber Projects, III**

The Government argues that plaintiff Weber Projects, III ("Weber" or Claim 7) lacks an ownership interest in the parcel adjacent to the rail corridor because the original railroad acquired the adjacent land in fee simple for "rail depot purposes." *See* United States' Cross-Mot. at 27–33. For this argument, the Government relies on O*&W Lines, Inc. v. St. John*, 20 N.Y.2d 17 (N.Y. 1867). *Id*. at 27. That case and its progeny recognize that a railroad acquires fee simple ownership of property condemned for rail depot purposes under New York law.

The Government articulates three reasons that it believes the original railroad acquired the adjacent land in fee simple for rail depot purposes. First, "the area of the rail corridor adjacent to the Weber property has an irregular shape that expands in size beyond the strip of land on which the rail line was constructed." *Id*. at 29. According to the Government, the irregular shape of this portion of the Beacon Line is evidence that the railroad acquired additional land beyond the strip needed for the rail line to accommodate a rail depot and related infrastructure for rail line operations. *Id*. at 29–30; *see also Ellar Ests. Corp. v. Cohen*, 383 N.Y.S.2d 532, 533 (2d Dep't 1976) (affirming trial court's finding "that the irregularity of shape" of the parcel "and its situs" established that the parcel "was obtained for depot purposes, and not as a right-of-way."); *O&W Lines, Inc.*, 20 N.Y.2d at 21 ("By the very shape of the property one can reasonably conclude that it had not been acquired solely for right of way purposes.").

Second, the Government presents evidence demonstrating that a former railroad depot was located near the Weber property. *See* United States' Cross-Mot. at 30–32. This evidence includes the existence of a former railroad depot—the Matteawan Railroad Station Depot—located across the street from the Weber property and a valuation map prepared by the STB's predecessor agency showing that a rail depot and various physical structures (coal silos and a shed) are located close by to the Weber property. *Id*. Third, the Government notes that the applicable condemnation petitions do not contain any language limiting the original railroad's acquisition of the land abutting the Weber property to a right-of-way. *Id*. at 32. Taken together, the Government argues that this evidence establishes that the land adjacent to the Weber property was condemned for rail depot purposes, thereby dooming Weber's claim. *Id*. at 33.

Plaintiffs dispute that the railroad acquired the land adjacent to the Weber property in fee simple. *See* Pls.' Resp. at 22–26. Plaintiffs respond to the Government's first argument by claiming that the irregular shape of the parcel is irrelevant because the irregularly shaped portion sits on the other side of the rail corridor and is not directly adjacent to the Weber parcel. *Id*. at 24. In plaintiffs' view, the Government's second argument also fails because no evidence has been introduced showing that the construction or occupation of a depot was planned at the time the condemnations occurred or that subsequent construction of the depot was linked to the earlier condemnations. *Id*. at 23 (citing *Crouch v. State*, 218 N.Y.S. 173, 179 (4th Dep't 1926) (observing that a railroad acquires condemned property in fee simple for rail depot purposes only when the

land is "actually occupied by passenger or freight depots" or such depots "were planned *at the time condemnation was made*, and were *included* in the award…") (emphasis added)). In any event, plaintiffs argue that the rail depot lacks any physical connection to the Weber parcel as the railroad depot lies across the street from the parcel. *Id.* Plaintiffs also assert that the existence of the coal silos and shed is irrelevant because those structures were built decades after the condemnation and thus cannot establish that the parcel was acquired to accommodate a rail depot. *Id.* at 25. Finally, plaintiffs contend that the absence of any language in the condemnation petitions limiting the interest acquired by the railroad to a right-of-way is not persuasive. *Id.* (citing *Crouch*, 218 N.Y.S.at 178–79). On this point, plaintiffs rely on a decision from the Fourth Department which appeared to discount the significance of language in a condemnation petition suggesting that a fee simple interest was conveyed. *See generally id.*

After considering the parties' arguments, the Court concludes that neither party is entitled to summary judgment. Genuine factual disputes remain regarding the nature of the interest acquired by the original railroad as to the Weber parcel. In its cross-motion, the Government has presented powerful (albeit disputed) evidence that the original railroad acquired the adjacent land in fee simple for rail depot purposes. Although plaintiffs failed to convince the Court at this stage that it was entitled to a finding of summary judgment on this point, they have nevertheless made a sufficient showing at this stage that genuine issues of material fact exist regarding the nature of the interest acquired by the railroad. The Court thus finds that summary judgment is inappropriate and that a trial is necessary to further develop the factual record regarding the nature of the interest acquired by the railroad.

### 2. Group 2: Deeds Referencing Railroad Purposes in Granting Clause

Plaintiffs move for summary judgment as to the Group 2 plaintiffs. *See* Pls.' Mot. at 31–34. The Group 2 plaintiffs consist of the following three plaintiffs:

| Claim No. | Plaintiff | Parcel No. | Applicable Conveyance | Record Source |
|---|---|---|---|---|
| 2 | 10 Boulevard LLC | 130200-6054-30-168772-0000 | Davidson 222/314 PLF000282 PLF000283 | Pls.' Ex. 52 |
| 4 | Beacon 248 Holdings, LLC | 130200-6054-45-012574-0000 | Wolcott 142/584 PLF000389 PLF000391<br><br>Van Buren 152/537 *PLF000373 PLF000375 | Pls.' Exs. 57, 61 |
| 6 | Justin McManus & Kurtis McManus | 133089-6356-01-200585-0000 | White 142/579 *PLF000386 PLF000388 | Pls.' Ex. 62 |

*Id.*, Ex. 2, ECF No. 40-2; Sec. Am. Compl. ¶¶ 7, 9, 11. The Group 2 plaintiffs argue that they are entitled to summary judgment because there is no genuine dispute that the recorded deeds conveyed easements to the original railroad that were limited to railroad purposes. *See* Pls.' Mot. at 31–34. In its cross-motion, the Government failed to address the Group 2 plaintiffs arguments

and appears to concede that the recorded deeds for the Group 2 parcels limited the grant to railroad purposes only. *See* United States' Cross-Mot., Ex. 1 at 2–3 (declining to categorize the three Group 2 claims into the Government's grouping scheme). Because the parties agree that the Group 2 deeds conveyed easements to the original railroad that were limited to railroad purposes, the Court finds that plaintiffs are successful as to this portion of their Group 2 claims.

**3. Group 3: Deeds Referencing Railroad Purposes in Granting Clause but also Containing Broader Language regarding Use of the Easement**

Group 3 consists of a single parcel owned by plaintiff Beacon 248 Holdings, LLC. *See* Pls.' Mot. at 34. Plaintiffs stress that the Group 3 deed is identical to the Group 2 deeds except that the Group 3 deed contains additional language about "the type of use allowed." *Id*. at 35. As an example of this broader language, plaintiffs reference the granting language in the Brown Deed, which states as follows:

> The said party of the first part … have sold and by these Presents do grant and convey to the said Dutchess and Columbia Rail Road Company their successors and assigns for the purposes of constructing along and operating thereon a Freight and Passenger Railroad as aforesaid *and for such other uses and purposes as the Company may choose to apply said land* that portion of the lands of said party of the first part upon which said Railroad line is so located …

*Id*. (quoting Pls.' Ex. 51 at 2) (emphasis added). According to plaintiffs, this broad use language does not alter the nature of the property interest conveyed but only expands the scope of the easement granted to the railroad. *Id*. The Government does not disagree that the interest conveyed was an easement. *See* United States' Cross-Mot. at 21. Since no dispute exists on this issue, the Court finds that the railroad only obtained an easement at the time of the original conveyance. The Government, however, cross-moves for summary judgment as to the Group 3 deed on the grounds that the easement is broad enough to encompass recreational trail-use. *See* United States' Cross-Mot. at 20–27.

On identical facts, Judge David Tapp just last year construed analogous deed language in *Zanzarella v. United States*, 180 Fed. Cl. 91 (2025). There, Judge Tapp concluded that the conversion of the same rail corridor into a recreational trail did not exceed the scope of the easement because the broad granting language in the deed allowed for "such other uses and purposes as the Company may choose to apply said land . . . ." *Id*. at 102–03. As Judge Tapp concluded, this phrase contemplated that the easement may be used for purposes beyond the railroad, including as a public recreational trail. *Id*. So too here. The use language in the Brown Deed is identical to the use language in the deed that Judge Tapp already determined was broad enough to encompass public recreational trails. The undersigned agrees with Judge Tapp's reasoning and therefore finds that the conversion of the rail corridor into a recreational trail did not exceed the scope of the easement for the Group 3 plaintiff based on the broad language contained in the deed. *See Romanoff Equities, Inc. v. United States*, 119 Fed. Cl. 76, 78 (2014), *aff'd*, 815 F.3d 809 (Fed. Cir. 2016) (finding that conversion of the rail corridor into a public park fit within the terms of the easement when the easement authorized use "for railroad purposes *and*

*for such other purposes as the Railroad Company*, its successors and assigns, may from time to time or at any time desire to make use of the same.") (emphasis added).

Plaintiffs caution that Judge Tapp's reasoning in *Zanzarella* can be swept aside as "not controlling on this Court." *See* Pls.' Resp. at 12. First, plaintiffs argue that the broad use language in the Group 3 deed applies only to the original acquiring railroad company and does not extend to the original acquiring railroad's "successor and assigns." *See* Pls.' Mot. at 40–42. Second, plaintiffs contend that a summary judgment finding in favor of the Government is unwarranted because plaintiffs anticipate introducing evidence at trial showing that the recreational trail use imposed a new and significant burden on their remainder parcel. *Id*. at 40–44; Pls.' Resp. at 12. As detailed below, the Court finds both of plaintiffs' arguments unpersuasive.

Plaintiffs first argue that the broad use language found in the Group 3 deed only applies to the original acquiring railroad and that any successor-in-interest "is restricted to use of the land for railroad purposes and does not enjoy a broad easement." *See* Pls.' Mot. at 41. For this argument, plaintiffs attempt to distinguish the facts of this case from those in *Romanoff Equities, Inc*. There, the plaintiffs argued that the easement at issue did not permit the government to convert the right-of-way into an elevated park in New York City. The trial court disagreed, finding that the deed "clearly and unambiguously" contemplated that the easement may be used for purposes beyond the railroad. *Romanoff Equities, Inc.*, 119 Fed. Cl. at 81. The Federal Circuit affirmed the trial court's decision. *Romanoff Equities, Inc. v. United States*, 815 F.3d 809 (Fed. Cir. 2016).

Here, plaintiffs point to language contained in the easement in *Romanoff Equities* stating that the easement was for "railroad purposes and for such other purposes *as the Railroad Company, its successors and assigns*, may from time to time or at any time or times desire to make use of the same." *See* Pls.' Mot. at 40–41 (emphasis added in original) (quoting *Romanoff Equities, Inc.*, 815 F.3d at 812–15). By contrast, the Group 3 deed states that the easement is "for the purposes of constructing along and operating thereon a Freight and Passenger Railroad as aforesaid and for such other uses and purposes *as the Company* may choose to apply said land." *Id*. at 41 (quoting Brown Deed, Pls.' Ex. 51) (emphasis added). Thus, plaintiffs argue that MNR—as the successor to the original railroad—"has no right to use the easement for any purpose and is instead restricted to use as if the broad language did not exist" because the Group 3 deed omits any mention of "successors and assigns." *Id*.

The Government disagrees for multiple reasons. *See* United States' Cross-Mot. at 25–27. The Government first points out that this exact argument was considered and rejected by Judge Tapp only six months ago. *Id*. at 25 (citing *Zanzarella*, 180 Fed. Cl. at 106). In *Zanzarella*, Judge Tapp acknowledged that the Federal Circuit's opinion in *Romanoff Equities* found that the easement's granting clause expressly authorized successors to utilize the rail corridor for "other purposes." 180 Fed. Cl. at 106. However, Judge Tapp cautioned that embracing the plaintiffs' interpretation of *Romanoff Equities* would graft an entirely new requirement onto state property law by concluding "that failure to include the 'successors and assigns' language is affirmative proof of the original parties' intent to limit the easement's broad language to the railroad." *Id*. Judge Tapp declined to do so. *Id*. The Government also argues that the absence of words of inheritance (such as "successors and assigns") in the Group 3 deed is legally irrelevant because

New York law does not require words of inheritance to create an easement that is binding on the servient estate. *See* United States' Cross-Mot. at 26 (collecting cases).

Second, plaintiffs assert that the trail-use easement imposes a "new and significant burden" on the Group 3 plaintiff's remainder parcel in the form of lost privacy and security. *See* Pls.' Mot. at 42–43; Pls.' Resp. at 11–12. In plaintiffs' view, an easement holder cannot "significantly burden the servient estate nor its abutting land" under New York law. *See* Pls.' Mot. at 42. Confronted with identical circumstances, Judge Tapp found in *Zanzarella* that the potential loss of privacy and security resulting from the conversion of the rail line to a recreational trail did not constitute a new and significant burden on the plaintiffs' remainder parcels. 180 Fed. Cl. at 105. Judge Tapp reasoned that the plaintiffs presented "no evidence" that the alleged loss of privacy and security represented "a burden uncontemplated by the original grant such that it could be construed as significantly burdening the servient estate or imposing a new and additional burden upon it." *Id*.

In reaching this decision, Judge Tapp concluded that a "significant burden" on a servient estate under New York law "arises when an easement holder undertakes actions that substantially interfere with the servient owner's use and enjoyment of the property in a manner *not contemplated by the terms of the easement*." *Id*. (citing *Lopez v. Adams*, 895 N.Y.S.2d 532, 535 (3d Dep't 2010) (emphasis added)). The conversion of the rail line to a recreational trail did not represent a "significant burden" because such a use was "fully contemplated by the easement's terms." *Id*. Consequently, any loss in the servient estate's privacy or security "should have been contemplated at the time the easement was granted." *Id*. The undersigned sees no reason to depart from Judge Tapp's reasoning on this point. The use language in the Group 3 deed is identical to the use language that Judge Tapp found broad enough to encompass use of the rail corridor as a public recreational trail. At the same time, plaintiffs have not presented any new evidence or argument tending to show that construction of a trail is a "new and significant burden" that should not have been contemplated by the original grant.

In sum, the Court agrees with the Government regarding the Group 3 deed. The deed conveyed a broad, general easement that encompasses the transformation of the rail corridor into a recreational trail. The conversion of the rail corridor into a public recreational trail is a reasonable use of the easement. The absence of "successors and assigns" language does not indicate an intent of the original parties to limit the "other purposes" conveyance to the original acquiring railroad. Any resulting loss of privacy or security does not impose new or significant burdens on the servient estate as the potential for those losses should have been contemplated at the time of the granting. Based on the foregoing analysis, the Court **DENIES** plaintiff's motion for partial summary judgment as to claims premised on the Group 3 deed and **GRANTS** the Government's cross-motion for partial summary judgment.

#### 4. Group 4: Deeds Referencing Railroad Purposes Outside of the Granting Clause

Plaintiffs move for summary judgment as to the Group 4 plaintiffs, requesting that the Court find that those deeds conveyed easements limited to railroad purposes. *See* Pls.' Mot. at 36–37. Group 4 consists of two plaintiffs reflected in the following table:

| Claim No. | Plaintiff | Parcel No. | Applicable Conveyance | Record Source |
|---|---|---|---|---|
| 11 | BAM Properties, Inc. | 23.-2-47 | Towner 47/468 | Pls.' Ex. 60 |
| 12 | Niche Modern, LLC | 130200-6054-22-246892-0000 | Boyce 142/613 PLF000055-000058 | Pls.' Ex. 53 |

*Id.*, Ex. 4, ECF No. 40-4; Sec. Am. Compl. ¶¶ 16–17. Plaintiffs address these two claims separately from the Group 2 recorded deeds because the language in the Group 4 deeds that purports to limit the interest conveyed to "railroad purposes" appears in the *habendum* clause rather than the *granting* clause. *See* Pls.' Mot. at 36. Nonetheless, plaintiffs assert that the language in the habendum clause "is intended to expand upon the grant and define the extent of the interest granted." *Id.* (citing *Mott v. Richtmyer*, 57 N.Y. 49, 63 (N.Y. 1874)). For that reason, plaintiffs urge the Court to interpret the language in the habendum clause in the context of the entire deed to avoid any conflict over the nature of the conveyed interest. *Id.* (citation omitted).

In its cross-motion, the Government does not contest that the two Group 4 deeds conveyed easements limited to railroad purposes. *See* United States' Cross-Mot, Ex. 41-1 at 5–6. Plaintiffs thus suggest that the Group 4 plaintiffs are entitled to a summary judgment finding that the deeds granted easements limited to railroad purposes. *See* Pls.' Resp. at 9. On cross-motions for summary judgment, however, the trial court must consider the merits of each motion separately and make an independent determination "whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Matusevich v. Middlesex Mut. Assurance Co.*, 782 F.3d 56, 59 (1st Cir. 2015) (citation omitted); *Aguiar-Carrasquillo v. Agosto-Alicea*, 445 F.3d 19, 25 (1st Cir. 2006) (an unopposed motion for summary judgment "does not automatically give rise to a grant of summary judgment" because a court must "consider the motion on its merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate")*; BPGS Land Holdings, LLC v. Flower*, 155 N.Y.S.3d 666, 668 (4th Dep't 2021) (quoting *Allen v. Cross*, 409 N.Y.S.2d 865, 868 (4th Dep't 1978) (the interpretation of a deed "presents a question of law for the court to decide" under New York law) (quotation marks omitted); *Staine v. Summit Place, Inc.*, 835 N.Y.S.2d 189 (1st Dep't 2007) ("Furthermore, construction of the plain language of a deed is a question of law for the court to determine."). Accordingly, the Court will independently examine each deed to determine the nature and extent of the interest conveyed.

When a deed conveying an interest in real property is ambiguous or uncertain about the interest conveyed, the court's mission is to ascertain the intent of the parties to the deed. *See* N.Y. Real Prop. L. § 240(3) ("Every instrument creating, transferring, assigning or surrendering an estate or interest in real property must be construed according to the intent of the parties"). A "reservation or grant in a deed, like every other contract must be construed according to the intent of the parties, so far as such intent can be gathered from the whole instrument, and is consistent with the rules of law." *Loch Sheldrake Assocs. v. Evans*, 306 N.Y. 297, 304 (N.Y. 1954) (citation omitted). *See also Camp Bearberry, LLC v. Khanna*, 225 N.Y.S.3d 767, 770 (3d Dep't 2025) (a

court may "look outside the four corners of the deed to establish the intent of the parties when . . . that instrument is found to be ambiguous") (quoting *Pepe v. Antlers of Raquette Lake, Inc.*, 927 N.Y.S.2d 732, 734 (3d Dep't 2011)).

New York law generally limits habendum clauses from cutting down the size of the estate conveyed by the granting clause. *Mott*, 57 N.Y. at 63–64. *See also Bannin v. Peck*, 41 N.Y.S.2d 668, 670 (1st Dep't 1943), *aff'd*, 291 N.Y. 717 (N.Y. 1943) (holding that in the granting clause prevails over conflicting language in the habendum clause that creates an irreconcilable repugnancy between the two clauses); *Allen v. Trs. of Great Neck Free Church*, 269 N.Y.S. 341, 346 (2d Dep't 1934) (same). However, the *Mott* rule "is only a rule of construction, and must yield to the manifest intent of the grantor." *Bates v. Virolet*, 53 N.Y.S. 893, 895–96 (1st Dep't 1898). If a grantor makes plain their intent to cut down an estate, "such intent makes that rule inapplicable." *Id.* (citing 1 Rev. Stat. p. 748 § 2) (It is "the imperative duty of the courts to ascertain the intention of the parties from all the provisions of the instrument."); *Basile v. Rose*, 7 N.Y.S.3d 1444, 1445 (3d Dep't 2015) (citing *Mott*, 57 N.Y. at 63; *Bannin*, 41 N.Y.S.2d at 670; *Bates*, 53 N.Y.S. at 895–96) ("[W]here there is a conflict between the provisions set forth in the premises clause and those in the habendum clause relative to the extent of the conveyance, the premises clause will control, *absent a clear indication of contrary intent elsewhere in the deed*.") (emphasis added).

After careful consideration, the Court concludes that the granting clauses and habendum clauses of the Towner and Boyce deeds do not create an irreconcilable repugnancy but the manifest intent of the grantors. *See Bates*, 53 N.Y.S. at 896. Plaintiffs concede that the language in the Boyce Deed's granting clause—a grant of "all" of the land to the railroad and its "successors and assigns, forever"—"is typically associated with a fee simple grant." *See* Pls.' Mot. at 37 (quoting Boyce Deed, Ex. 53).[3] However, both deeds contain habendum clauses which express the grantors' intent to convey their parcels "*expressly for Rail Road purposes & for no other*." Boyce Deed, Ex. 53 (emphasis added); Towner Deed, Pl.'s Ex. 60 (limiting conveyance "for Rail purposes."). Here, the habendum clauses demonstrate the intent of the grantors—to expressly limit the conveyances for railroad purposes. *Evans*, 306 N.Y. at 304; *Basile*, 7 N.Y.S.3d at 1445.

As such, the clauses may be harmonized to cut down the conveyances afforded to the Boston Hartford and Erie Railroad Company (Towner) and the Dutchess & Columbia Railroad Company (Boyce); which are therefore not fee simple estates. *See* Towner Deed, Ex. 60; Boyce Deed, Ex. 53. Accordingly, the Court **GRANTS** plaintiffs' motion for partial summary judgment as the two Group 4 plaintiffs and **DENIES** the Government's cross-motion for summary judgment as to these two claims.

---

[3] Plaintiffs argue that Judge Tapp "agreed" that the Boyce Deed conveyed an easement limited to railroad purposes. Pl.'s Mot. at 37 (citing *Zanzarella*, 180 Fed. Cl. at 107). There, Judge Tapp did find that the plaintiffs were entitled to judgment because the government did not dispute the nature and scope of the interest conveyed by the deed. 180 Fed. Cl. at 107. While plaintiffs' argument proceeds unopposed like in *Zanzarella*, the Court still must consider their argument on its merits. *See Aguiar-Carrasquillo*, 445 F.3d at 25; RCFC 56(e)(3).

### B. Centerline Presumption

The Court now considers the parties' dispute regarding the applicability of the "centerline presumption." The centerline presumption generally assumes that property owners whose land borders a railroad or road also own the land up to the centerline of that right-of-way, unless state law or the original deed shows otherwise. *Castillo*, 952 F.3d at 1311, 1314, 1320 (citing *Banks v. Ogden*, 69 U.S. 57, 68 (1864)). "The presumption is just that—a presumption. It can be rebutted." *Zanzarella*, 180 Fed. Cl. at 111. In New York, "[t]he centerline presumption can be rebutted [] by a showing that the grantor intended to limit the grant to the edge of the road." *Marks v. Gaeckle*, 156 N.Y.S.3d 402, 404 (2d Dep't 2021). This showing can be satisfied by evidence "from the deed or surrounding circumstances" demonstrating "that the original grantor intended to transfer land only up to the edge of the road." *Zanzarella*, 180 Fed. Cl. at 111 (applying New York law); *Dimarino v. United States*, 179 Fed. Cl. 119, 120, *opinion clarified*, 178 Fed. Cl. 733 (Mar. 25, 2025) (explaining that the deed's language, land layout, and actions of past owners are relevant to determining any intent to limit the grant) (citation omitted). To overcome the centerline presumption, the deed must include language that affirmatively limits the scope of the conveyance. *Town of Clifton Park v. Boni Builders, Inc.*, 66 N.Y.S.3d 550, 553–54 (3d Dep't 2017) (citation omitted).

As an initial matter, the Court first addresses which claims are not addressed in this section. First, the Court does not consider whether the centerline presumption applies to the claims asserted by plaintiffs Justin and Kurtis McManus, Clovebrook Farms, LLC, and Talix Commercial Condominium (Claims 6, 8, and 14) because the Government concedes that these plaintiffs own the land up to the centerline of the right-of-way. *See, e.g.*, United States' Ex. 1. Second, the Court does not consider the applicability of the centerline presumption as to claims asserted by plaintiffs that lack an ownership interest in the underlying land adjacent to the corridor. The Court has already found that plaintiffs Beacon 248 Holdings, LLC, BAM Properties, Inc., and Niche Modern, LLC (Claims 4, 11, and 12) lack such an interest. Third, the Court does not consider the applicability of the centerline presumption to claims asserted by plaintiffs that have not established ownership in the land adjacent to the corridor at the summary judgment stage. *Anderson v. United States*, 147 Fed. Cl. 661, 690 (2020) (declining to consider the extent of the plaintiff's ownership interest where plaintiff failed to establish underlying fee ownership in the first place), *aff'd*, 23 F.4th 1357 (Fed. Cir. 2022). These include the claims asserted by plaintiffs Hilltop Sports & Conservation, Inc., Weber, and Eleventh Jam Development, LLC (Claims 5, 7, and 10).

In their motion, plaintiffs assert that the centerline presumption applies to all claims in this case because each plaintiff has established (1) that the original deed granted only a right-of-way to the railroad; and (2) ownership of the property abutting the right-of-way at the time the NITU was issued. *See* Pls.' Mot. at 46 (citation omitted). In its cross-motion, the Government does not contest whether any of the properties are adjacent to the Beacon Line. *See* United States' Cross-Mot. at 34. Rather, the Government argues that the centerline presumption does not apply to nine of the plaintiffs' claims because the deeds conveying interests expressly exclude the Beacon Line in one way or another. *Id*. at 9, 34–35. Those nine plaintiffs are listed in the chart below, along with the descriptions of their properties from the relevant deeds and citations to the summary judgment record:

| Claim No. | Plaintiff | Description of Land in Deed | Record Source |
|---|---|---|---|
| 1(a) | Samantha Sherman | "BEGINNING at a point formed by the intersection of the westerly side of lands now or formerly of The New York, New Haven & Hartford Railroad and the center line of a certain stone wall (or remains thereof) running generally east and west through Lot 1 as same is shown on Map #8081… measured along said stone wall located in said lot 1, by the following courses and distances South 83° 11' 17" East 154.93 feet to lands now or formerly of the New York, New Haven & Hartford Railroad and the northeast corner of the lands to be described herein. Thence from said point of beginning on a curve to the left with a radius of 2438.16 and a length of approximately 150 feet to the common Town/County boundary line between the Town of Pawling in the County of Dutchess and the Town of Patterson in the County of Putnam" | Pls.' Ex. 31a; United States' Ex. 4 |
| 1(b) | Samantha Sherman | "Thence easterly along said dividing line approximately 320 feet to the easterly line of the parcel herein being described (also lands now or formerly of the New York, New Haven & Hartford Railroad); Thence on a curve to the left with a radius of 2438.16 feet, a length of approximately 450 feet, Thence South 41° 42' 43" East 865 .81 feet to lands now or formerly of M.S. Farms, Inc. also known as Lot 2 on Filed Map 1866;" | Pls.' Ex. 31f; United States' Ex. 4 |
| 2 | 10 Boulevard, LLC | "THENCE from the said point of beginning westerly along the northerly line of East Main Street, the following courses: N 50°04'36" W 75.30 feet, N 75°02'1" W 45,60 feet, N 74°51'4" W 21.52 feet, N 66°14'0" W 62,91 feet, and N 59°54'20" W 154,84 feet to a point at the line of from lands formerly of the Central New England Railway Company, formerly of Penn Central Corporation, formerly of Consolidated Railroad Corporation and now or formerly of Midtown Trackage Ventures, LLC (hereinafter the Railroad), which point occupies coordinate position N 972,786.95 (y) E 639,301.54 (x) of the New York State Coordinate System, East Zone (NAD 83, expressed in feet). THENCE from the said point of beginning northerly along the easterly line of the said Railroad lands, the following courses: N 19° 31' 00" E 80.61 feet, N 89° 39' 30" E 25.26 feet, N 02° 53' 3" E 139.23 feet, N 17° 11' 30" E 70.28 feet, N 35° 41' 30" E 126.65 feet, N 48° | Pls.' Ex. 32a; United States' Ex. 4 |

| | | | |
|---|---|---|---|
| | | 53' 30" E 40.87 feet, N 55° 09' 30" E 252.59 feet, and N 55° 51' 30" E 23.41 feet," | |
| 3 | 23-28 Creek Drive, LLC | "Beginning at a rebar found on the southwest comer of Lot I of a map entitled "Subdivision Plat Prepared for Weber Projects Ill, LLC prepared by TEC Land Surveying and filed with the Dutchess County Clerk's office on October 30, 2015 as Map No. 12519, said rebar lying on the southeasterly bounds of lands, now or formerly, of Metro North Commuter Railroad Co. (Doc. No. 02-2009-1705); Thence, along the same North 35° 21' 37" East a distance of 83.03 feet to a point;" | Pls.' Ex. 33a; United States' Ex. 4 |
| 5(b) | Hilltop Sport & Conservation, Inc. | "BEGINNING at a point on the northerly side of the right of way of the New York, New Haven and Hartford Railroad Company, which said point is also the southwesterly corner of lands now or formerly of Farrington and marked by a wood post and wire fence; thence running North 81-35' 00" west along a post and wire fence, and along the Northerly side of the right of way of the New York, New Haven and Hartford Railroad Company for a distance of 700.00 feet" | Pls.' Ex. 35e; United States' Ex. 4 |
| 7 | Weber Projects, III | "BEGINNING at a nail set in the westerly line of Churchill Street where the same is intersected by the division line of lands now or formerly of 3 Churchill Street, Inc. and lands of Metro North Commuter Railroad (Tax ID 6054-37-09671)… THENCE along lands now or formerly Metro North Commuter Railroad Company N 35-21-37 E a distance of 178.50 feet to a rebar set. THENCE S 45-38-23 E a distance of 20.00 feet to a rebar set; THENCE along lands now or formerly Metro North Commuter Railroad Company on a railroad curve to the right having a radius of 1,860.58 feet, an arc length of 171.04 feet, and a chord bearing of N 45-07-30 Eta a nail set, thence on compound curve to the right having a radius of 1,587.78 feet and an arc length of 223.16 feet to a nail set, and N 54-46-37 E a distance of 15.27 feet to the point of BEGINNING." | Pls.' Ex. 37a; United States' Ex. 4 |
| 9 | John DeMarco | "ALL that certain plot piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of Pawling, County of Dutchess and State of New York being more particularly bounded and described as follows…THENCE westerly 20 feet more or less to a point on the easterly side of land now or formerly | Pls.' Ex. 39a; United States' Ex. 4 |

| | | | |
|---|---|---|---|
| | | of Metro North Railroad; THENCE westerly in company with said highway to the southeast comer of said Nelson Denton's land (survey, 98 feet more or less) to the place of BEGINNING." | |
| 10 | Eleventh Jam Development, LLC | "Thence South 89 degrees 18 minutes 10 seconds East along a portion of the south line of land of Central New England Railway Co. 363.00 feet…" | Pls.' Ex. 40a; United States' Ex. 4 |
| 13 | Sahib Singh and Maninder Kaur | "Lot 24 on map 9470, being more particularly described as follows… Thence leaving said line and running along the westerly line of lands of Lot No. 25 on said map No. 9470, South 11 degrees 13 minutes 32 seconds West 334.85 feet to a point on the northerly line of lands of Conrail Corp, thence leaving said line and running along the northerly line of lands of said Conrail Corp. 415 feet on a curve to the right having a radius of 2815.43 feet to a point. Thence leading said line and running along the easterly line of lands of aforesaid Lot 23, as shown on said map No. 9470." | Pls.' Ex. 43a; United States' Ex. 4 |

For these nine plaintiffs, the Government raises various arguments for why the deeds held by these plaintiffs "go much further in their exclusionary language, evidencing an intent to exclude the corridor." *See* United States' Cross-Mot. at 35 (citing United States' Ex. 4). The Court addresses the arguments raised by the parties, ultimately finding that the centerline presumption remains intact for Claims 1(a), 1(b), 2, 3, 9, and 13.

**1. Claims 1(b), 2, and 13**

The Government argues that the modern deeds held by three of the plaintiffs—Samantha Sherman Claim 1(b), 10 Boulevard, LLC, and Sahib Singh and Maninder Kaur—"use directional lines, rebutting the centerline presumption" because the boundaries of these properties are defined by the directional lines. *Id*. at 36. For this argument, the Government relies on *Marks*, 156 N.Y.S.3d and Judge Tapp's decision in *Zanzarella*. *Id*. The Government represents that the Second Department "ruled" in *Marks* that a deed defining the properties' boundary with directional lines supports the conclusion that the deed expressly excluded the disputed strip. *Id*. (citation omitted). The Government further asserts that Judge Tapp concluded in *Zanzarella* that the centerline presumption did not apply when evaluating modern deeds bearing the same directional language. *Id*. (citing *Zanzarella*, 180 Fed. Cl. at 113).

Plaintiffs counter that the Government misrepresents the significance of the Second Department's discussion of the directional language found in the *Marks* deed. *See* Pls.' Resp. at 16–17. As plaintiffs correctly point out, the trial court in *Marks* did not "rule" that the deed's directional language excluded the disputed strip from the conveyance. In fact, the trial court *denied* the parties' cross-motions for summary judgment after finding that "trial issues of fact exist regarding who has title to the disputed strip" given that the competing evidence presented by the parties "fail[ed] to resolve the question of ownership as a matter of law." *Marks*, 156 N.Y.S.3d at

404. The Second Department affirmed that decision, concluding that the historical deed "is ambiguous as to whether the grantors intended to limit the conveyance to the edge of the private road." *Id*.

Plaintiffs further assert that any directional or boundary language in the deeds does not rebut the centerline presumption because this language reflects "directional callouts of the abutting roads." *See* Pls.' Resp. at 15. According to plaintiffs, New York law is clear that "directional callouts or references to [] abutting roads in a property description are not sufficient to defeat [the centerline] presumption." *Id*. Plaintiffs cite numerous cases for this proposition—many of which are well over 100 years old. *See, e.g.*, *Bird v. City of New York*, 125 N.Y.S. 1028, 1029–30 (2d Dep't 1910) (finding deed conveyed land to the centerline of a road where the deed described the parcel as "bounded the farm on the turnpike road, and the northerly boundary ran 'along the turnpike road.'"); *In re City of New York*, 77 N.Y.S. 31, 34 (1st Dep't 1902) ("A street, when described as the boundary of a piece of property conveyed, is regarded as a line, and that line is the center of the street [] and when the boundary runs to and along the street it clearly includes the fee of the street."); *Hennessey v. Murdock*, 137 N.Y. 317, 322–23 (N.Y. 1893) (centerline presumption applied and deed conveyed the land to the center of the street when the deed described the land as "bounded on the south side by a one road lane or alley, according to the map on file, or by public lane."). Thus, plaintiffs assert that "the default presumption" under New York law "is that the grantor intended to convey the fee to the centerline of abutting roads, and directional callouts or references to those abutting roads in a property description" do not suggest an intent to exclude the land in the rail corridor and thus are not sufficient to defeat the centerline presumption. *See* Pls. Resp. at 15.

In its reply, the Government argues that the cases cited by plaintiffs do not militate in favor of applying the centerline presumption. In the Government's view, the centerline presumption applied in *Bird* because there, unlike here, "it was undisputed that the railroad abandoned the rail corridor and the original deed contained a reversionary clause." *See* United States' Reply Br. at 20. *In re City of New York* is distinguishable because the facts relied on by the court in applying the centerline presumption there—the presence of a "plat map, the fact that the street had never been constructed or used, and the fact that neighbors put up fences extending into the middle of said proposed street"—are absent here. *Id*.

After weighing the parties' arguments, the Court finds that plaintiffs Samantha Sherman (Claim 1(b)), 10 Boulevard, LLC, and Sahib Singh and Maninder Kaur own their properties up to the centerline of the adjacent rail corridor. A review of the directional callouts in the property descriptions for these parcels demonstrates that the callouts are of abutting roads. *See* Pls.' Exs. 31f, 32a, 43a. Such callouts do not defeat the centerline presumption under New York law based on the authority presented to the Court. Likewise, the Government's attempt to distinguish the facts of this case from those in *Bird* and *In re City of New York* is not persuasive in light of the centerline presumption's prevailing purpose, which is to derive the greatest value from an ambiguity in property boundaries in order to maximize the use of land. *See In re Ladue*, 23 N.E. 465, 467 (N.Y. 1890) (collecting cases). The Government has not shown that this purpose is served by declining to apply the presumption on these facts.

The Court also rejects the additional argument raised by the Government that the centerline presumption does not apply to Samantha Sherman's Claim 1(b) because the modern deed for this parcel "describes a division line separating the Railroad and the parcel." *See* United States' Cross-Mot. at 39. The Government fails to cite any authority showing that New York law restricts application of the centerline presumption in cases where a deed describes a division line between a railroad and parcel. Plaintiffs counter that references to a "dividing line" or "division line" in the deed does not reflect an intent to "exclude the roadbed" because "it is not a term of art that identifies the outer edge of the road as a boundary." *See* Pls.' Resp. at 19. In contrast to the Government, plaintiffs cite numerous cases from New York for the argument that these phrases are descriptive references used to orient the reader of the deed. *Id*. The Court agrees with plaintiffs and thus finds that the centerline presumption applies to Sherman's Claim 1(b).

**2. Claims 1(a) and 9**

The Government next argues that the centerline presumption does not apply to the claims of plaintiffs Samantha Sherman (Claim 1(a)), Hilltop Sport & Conservation, Inc., and John DeMarco. *See* United States' Cross-Mot. at 37–38. For these plaintiffs, the Government asserts that the modern deeds did not convey property to the centerline of the corridor given "the use of cardinal direction" of a right-of-way in the modern deed's property descriptions. *Id*. at 38. According to the Government, a deed that limits the conveyance to the directional side of a right-of-way does not convey land in the right-of-way under New York law. *See* United States' Reply Br. at 21 (citing *Town of Lake George v. Landry*, 946 N.Y.S.2d 704, 708–09 (3d Dep't 2012)).

Plaintiffs counter that the Government's reliance on *Town of Lake George* is misplaced because that case did not address whether an abandoned easement was excluded from the fee grant. *See* Pls.' Resp. at 16 (citation omitted). Rather, the court there considered whether the interest of an easement holder extended to the centerline of a road. *Town of Lake George*, 946 N.Y.S.2d 704 at 708–09. The Third Department declined to apply the centerline presumption after finding that the municipality acquired title to the road by dedication and that the defendant only held an easement over a stretch of land clearly defined in the conveyance instrument. *Id*.

The Government asserts that the centerline presumption does not apply to Samantha Sherman's claim (Claim 1(a)) for the additional reason that her "modern deed describes a corner of an intersection and then runs along the center stone wall." *See* United States' Cross-Mot. at 39. Relying on *City of Albany*, the Government argues that the centerline presumption is rebutted and the grant is limited to the exterior line of the street "when the deed describes the grant as *starting at the corner of an intersection* and then running *along parallel* to or *bounding* on a street or streets to the beginning point . . . ." *Id*. at 38 (emphasis in the original) (citing *City of Albany v. State*, 270 N.E.2d 705, 707 (N.Y. 1971)). Plaintiffs disagree, arguing out that the deed's property description for Sherman's Claim 1(a) "materially differs" from the rule established in *City of Albany*, which applies only to "exterior intersections of two *streets*—not corner points where one street meets another monument." *See* Pls.' Resp. at 17 (emphasis in the original). Plaintiffs again stress that "references to monuments are interpreted as descriptive, not restrictive, under New York law." *Id*.

After review, the Court finds that the centerline presumption applies to the claims asserted by plaintiffs Samantha Sherman (1(a)) and John DeMarco. The Court fails to see the logic in applying the centerline presumption differently to property boundaries described with *cardinal directions of a right-of-way* as opposed to *directional lines*. Judge Tapp's findings in *Zanzarella*

reinforce this point. In that case, Judge Tapp found that materially similar language did not affect the application of the centerline presumption. *See Zanzarella*, 180 Fed. Cl. at 113 (finding centerline presumption applied to claims asserted by plaintiffs John and Alexandra Colbert, Haslett/JLD Fishkill, and Caroline Meyer). The Court is also not persuaded by the Government's additional argument against applying the centerline presumption to Samantha Sherman's parcel. The Court agrees with plaintiffs that the deed language for Sherman's Claim 1(a) materially departs from the rule set down in *City of Albany*, which addressed exterior intersections of two streets rather than corner points of a set monumental reference. On these facts, the Court believes the deed language in the Sherman deed is descriptive rather than restrictive.[4]

The Court thus finds that the centerline presumption remains intact as to these two plaintiffs. The Court makes no ruling regarding whether the centerline presumption applies to the property purportedly owned by plaintiff Hilltop Sports & Conservation, Inc., as this plaintiff has not established ownership in the underlying land adjacent to the corridor at this stage.

### 3. Claim 3

The Government finally argues that the centerline presumption does not apply to plaintiff 23-28 Creek Drive, LLC because the modern deed for this parcel refers to a boundary marker at the edge of the railroad. *See* United States' Cross-Mot. at 40 (citing Pls.' Ex. 33a). For this argument, the Government asserts that deeds describing "the existence of a boundary marker at a railroad rebut the centerline presumption." *Id.* The Government again declines to cite any authority tending to show that descriptive references to a boundary marker at a railroad's edge rebuts the centerline presumption under New York law.

Plaintiffs retort that the Government's own argument—a deed that *describes* the existence of a boundary marker at a railroad—"highlight[s] the function [that] these directional points serve." *See* Pls.' Resp. at 20. In plaintiffs' view, "monuments that orient the reader but do not explicitly exclude the road from the grant should be treated as descriptive, and the centerline presumption should govern." *Id.* (citing *Town of Clifton Park*, 156 A.D.3d at 1037). The Court agrees with plaintiffs, finding that the centerline presumption applies to plaintiff 23-28 Creek Drive, LLC's claim.

## V. Causation

The parties also cross-move for summary judgment on the question of whether the STB's actions caused a taking of plaintiffs' property. The Government argues that plaintiffs cannot establish that the STB's actions caused a taking of their property. *See* United States' Cross-Mot. at 42–44. Specifically, the Government argues that the undisputed evidence in the record demonstrates that MNR would have abandoned the railroad corridor during the NITU period even if the STB had not issued the NITU. *Id.* at 42. To support this argument, the Government asserts that MNR possessed the necessary authority to abandon the rail corridor *before* the STB issued the

---

[4] The Government argues that the centerline presumption also does not apply to plaintiff Weber Projects, III's parcel because the modern deed language for that parcel describes a corner of an intersection. *See* United States' Cross-Mot. at 39. The Court does not consider whether the centerline presumption applies to this claim given the factual disputes surrounding the nature of the interest acquired by the original railroad. *See Supra* pp. 9–10.

NITU. *Id*. MNR declined to do so. *Id*. Instead, MNR is taking advantage of the "STB's regulatory regime, all for purposes of railbanking." *Id*. However, "[s]ince MNR could have abandoned the corridor" before the NITU's issuance, "it did not have to go through the railbanking process to abandon." *Id*. Thus, plaintiffs cannot show that the Government's actions delayed MNR's abandonment of the railroad corridor. *Id*.

Plaintiffs disagree, stressing that MNR's actions before the NITU was issued are legally irrelevant "because MNR requested the NITU, a NITU was issued, MNR converted part of the railroad corridor to a recreational trail, and MNR is the trail sponsor." *See* Pls.' Resp. at 30. Thus, plaintiffs claim that the Government's causation argument "ignores the permanent physical taking that has already occurred and the numerous verified statements MNR has made to the STB in recent years confirming its intent to complete the trail project through the railbanking process." *Id*.

To answer whether plaintiffs here have established causation, the Court must first determine the proper analytical framework established by the Federal Circuit. A NITU alone is not sufficient to establish that the government has caused a taking. Rather, the Court should take a totality of the circumstances approach to discern "whether [the railroad] would have consummated abandonment in the absence of the NITU." *Sauer W. LLC v. United States*, 151 F.4th 1339, 1346 (Fed. Cir. 2025), *cert. denied*, 2026 WL 1718014 (June 15, 2026). In *Sauer West*, the Federal Circuit discussed the various factors that should be considered when seeking to determine the railroad's intent. Those facts are (1) the railroad's requested abandonment; (2) the railroad's refusal to consent to an extension of the NITU; (3) the railroad's abandonment of the railroad line within three months of the NITU's expiration; (4) whether the NITU authorized track removal during the pendency of the NITU period; and (5) whether the railroad did in fact remove tracks. *Id*. (citing *Caquelin*, 959 F.3d at 1373).

The Government asserts that "many of the factual indicia the Federal Circuit found instructive in *Sauer West* are present here." *See* United States' Cross-Mot. at 43. For instance, MNR still uses portions of the Beacon Line for storage of railroad equipment and fiber optic communication lines, railroad infrastructure (including tracks, ties, and rail beds) has not been removed since the NITU's issuance, and MNR has sought and obtained multiple extensions of the NITU period before the NITU was set to expire. *Id*. at 43–44; *see also Sauer West v. United States*, 168 Fed. Cl. 49, 68 (2023) (finding plaintiffs had not demonstrated that the railroad would have abandoned the line and therefore failed to establish causation when the railroad continued to use the railroad line for storage, improvements were made to the line, no track was removed, and the railroad obtained six one-year extensions to negotiate the trail-use agreement).

Plaintiffs acknowledge that MNR continues to use a portion of the Beacon Line for storage purposes but nevertheless argues that the Government's comparisons to *Sauer West* are "oversimplified and incorrect." *See* Pls.' Resp. at 33. Plaintiffs further point out that three of the factors "central to the Federal Circuit's analysis in *Sauer West* are absent here: negotiations with other parties to reopen the line for railroad use, the lapse of negotiations and expiration of the NITU, and the eventual decision not to abandon." *Id*. (citation omitted).

No doubt, the factual similarities between this case and *Sauer West* are real. However, the Court is mindful that the "Circuit's focus has always been on the NITU's issuance and, in the absence of a trail use agreement, the railroad's intent, or lack thereof, to abandon the line." *Zanzarella*, 180 Fed. Cl. at 143. Although MNR has not reached a trail use agreement and has not consummated abandonment, it has initiated the abandonment process by filing a Verified Notice of Exemption of Abandonment. *See* Pls.' Mot. at 22 (citing Pls.' Ex. 25). In this Circuit, filing such a notice constitutes "affirmative intent to abandon" a railroad corridor. *Caquelin*, 959 F.3d at 1372; *Dimarino*, 178 Fed. Cl. at 735. MNR has also repeatedly expressed to the STB its intent to abandon the line in favor of a public recreational trail. *See, e.g.*, Pls.' Ex. 5, 29–30, 78.

The Government's causation argument rests in large part on the fact that the Maybrook Trail was constructed before the NITU was issued. In the Government's view, the existence of the Maybrook Trail prevents plaintiffs from establishing that federal action destroyed their property rights because their land would remain encumbered absent the NITU. That is a legitimate argument that may ultimately influence the amount of just compensation owed in this case. The Court takes no position on that point at this time. On liability, however, the Government has not presented any authority establishing that a plaintiff cannot state a takings claim due to their land being encumbered by a trail that pre-existed the NITU.

Against this backdrop, the Court finds that the Government has not presented sufficient evidence "affirmatively indicating the railroad would have delayed abandonment . . . had there been no NITU." *Sauer West*, 151 F.4th at 1346. The Court thus concludes that the Government has not rebutted the presumption "that a railroad owner that begins the abandonment process intends to abandon its rail line" because the evidence presented does not establish "that the abandonment process was initiated by mistake or . . . that the railroad never intended to abandon the line." *Blevins v. United States*, 158 Fed. Cl. 295, 308 (2022).

On the other hand, plaintiffs have presented sufficient evidence reflecting MNR's intent to abandon the rail corridor absent the NITU. This evidence includes the initiation of abandonment proceedings by filing a Verified Notice of Exemption of Abandonment, the NITU's issuance and the fact that it has not lapsed, MNR's acknowledgement that it will step into the role of trail operator and that the right-of-way will be subject to potential reactivation of the rail line, and correspondence between MNR and the STB evidencing MNR's intent to abandon the Beacon Line. *See* Pls.' Ex. 5 at 10 ("The right-of-way is part of a line of railroad proposed for abandonment…"); Pls.' Ex. 29 at 4–5 (stating that "MNR is in active discussions with a potential trail sponsor" and that MNR is prepared "to serve as trail sponsor."). Other evidentiary examples abound, including the absence of any negotiations between MNR and third parties to reopen the line for railroad use or any subsequent decision by MNR to not abandon the Beacon Line.

Accordingly, the Court **GRANTS** plaintiffs' partial motion for summary judgment as to causation for any plaintiff that has established a property interest as discussed earlier in this opinion and **DENIES** the Government's cross-motion for partial summary judgment as to causation.

## VI. Conclusion

Based on the foregoing analysis, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** plaintiffs' motion for partial summary judgment as to liability (ECF No. 40) and **GRANTS-IN-PART** and **DENIES-IN-PART** the Government's cross-motion for partial summary judgment as to liability (ECF No. 41). The Government has taken a portion of plaintiffs' property for public use, but liability remains unresolved for several claims. Thus, a trial is required to resolve any outstanding issues of liability. Given that plaintiffs have not prevailed on several claims and mindful of its earlier order regarding an additional period of investigative time, ECF No. 36, the Court will give plaintiffs until **October 15, 2026**, to collect all deeds in the chain of title as to Claims 5 and 10.

The Court also **ORDERS** the parties to meet-and-confer and file a joint status report within **14 days** of this order being issued proposing dates for various pre-trial deadlines (*e.g.*, joint stipulations, pre-trial submissions, evidentiary objections, witness and exhibit lists, pre-trial conference). Recognizing that a site visit may necessary, the parties' joint submission should also propose dates for a site visit before the commencement of trial. The joint status report should include any information the parties deem pertinent regarding the potential site visit, including sequence of locations to be visited, estimated time needed, number of individuals expected to attend, and any other details helpful to facilitate the visit.

The Clerk of the Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge